**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ELIZABETH and KEITH WHITE,<br>Plaintiffs,<br>v.<br>AMERICAN HOME MORTGAGE CORP.,<br>Defendant. | C.A. No. 07-200-ML |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this civil action, plaintiffs contend they are entitled under the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, to rescind a debt consolidation loan they received from defendant American Home Mortgage Corp. d/b/a American Brokers Conduit ("American Home") in 2006.[1] TILA affords consumers receiving non-purchase-money loans the right to rescind within three business days of the transaction's consummation or from delivery of the material disclosures, whichever occurs later. Should a creditor fail to properly inform a consumer of his or her rescission right, however, the consumer may rescind at any time up to three years following consummation of the transaction. Here, plaintiffs allege they received the loan on September 27, 2006, but their Notice of Right to Cancel – the form which informed plaintiffs of their TILA rescission right – stated the transaction date as September 26, 2006, and one of three possible rescission deadlines as September 29, 2006. They now seek to exercise

[1] For the sake of accuracy, defendant's legal name is American Home Mortgage Corp., although it is identified in the Complaint only as "American Home Mortgage." American Home sometimes does business under its trade name, American Brokers Conduit.

their alleged right to rescind under the extended three-year period, contending that American Home failed to identify the proper date of the transaction and rescission deadline.

However, plaintiffs' allegation that the loan transaction occurred on September 27 – the cornerstone of their claim – is simply not accurate. First, the relevant documents, including every document personally signed by plaintiffs, all reflect a closing date of September 26. No documents reflect that they were signed, or intended to be signed, on September 27. Second, American Home's instructions to the settlement agent conducting the closing required that the loan transaction occur on September 26, and on no other date. Third, third-party testimony establishes that September 26, and not September 27, was the actual transaction date. In particular, the settlement agent confirms the accuracy of the documents, and the inaccuracy of plaintiffs' unfounded claim to the contrary.[2] Because plaintiffs are not entitled to the extended three-year rescission period, they are precluded from asserting that right now.

Moreover, even if the closing did occur on September 27 – a notion that American Home disputes – plaintiffs' claim still fails as a matter of law. The United States Court of Appeals for the First Circuit has held that TILA does not require perfect notice of the right to rescind. Even if the transaction date and rescission deadline were misstated, the Notice of Right to Cancel nonetheless informed plaintiffs that they were entitled to rescind on the third business day following the date of the transaction. A reasonable consumer would have recognized so obvious an error like the misstated date of the transaction, and could have ascertained the actual rescission deadline. Additionally, the Notice of Right to Cancel stated that plaintiffs' rescission right ran from ***either the later of*** the allegedly misstated deadline ***or*** the date they received the

---

[2] On June 13, 2007, counsel for American Home sent a letter to plaintiffs' counsel explaining the evidentiary deficiencies in plaintiffs' case and asking for an explanation of plaintiffs' claim to the September 27 date. That explanation has not been forthcoming.

Notice. Plaintiffs allege they received this disclosure on September 27. Thus, even assuming the Notice of Right to Cancel misstated the rescission deadline based on the date of the transaction, the same Notice nonetheless clearly and conspicuously disclosed the alternative three-day deadline which began running from plaintiffs' receipt of the Notice.

Finally, even if the dates on the Notice were misstated, and even if the misstatement obscured plaintiffs' right to rescind the loan transaction, the error nonetheless falls within the "safe harbor" exception found at 15 U.S.C. § 1640(c). Any mistake in dates was plainly unintentional and purely clerical in nature, and occurred notwithstanding the maintenance of procedures adapted to avoid such an error.

Accordingly, American Home respectfully requests that the Court grant its Motion to Dismiss or, in the Alternative, for Summary Judgment.

## BACKGROUND

On September 26, 2006, plaintiffs obtained a loan from American Home secured by their residence, for the purpose of debt consolidation. Statement of Undisputed Facts ¶ 1. The closing of the loan was held that same day by AmeriTitle, LLC ("AmeriTitle"). *Id.* ¶¶ 2-3. AmeriTitle is in the business of closing mortgage loan transactions on behalf of mortgagees and mortgagors. *Id.* ¶ 4. Louis Marandola, a Rhode Island attorney and notary public with AmeriTitle, personally conducted the closing. *Id.* ¶ 5. Part of Mr. Marandola's duties as an AmeriTitle settlement agent are to have mortgagors sign, and to provide them with copies of, documents pertinent to their loan transactions. *Id.* ¶ 6. He carefully examines all documents prior to, or at, a closing to ensure their accuracy, including the accuracy of dates. *Id.* ¶ 7.

Indeed, it is AmeriTitle's procedure to have an assistant who is trained in the preparation of loan closing documents prepare such documents. *Id.* ¶ 8. After the documents are prepared,

Mr. Marandola proofreads them before a mortgagor signs them. *Id.* Either he or his assistant then reviews each document with the mortgagor before the mortgagor signs it. *Id.* These same procedures were following in connection with the closing of plaintiffs' loan transaction. *Id.* ¶ 9.

Prior to the closing, Mr. Marandola received a document from American Home entitled "Confirmation of Loan Scheduling." *Id.* ¶ 10. This document identified the closing date of plaintiffs' loan as September 26, 2006. *Id.* ¶ 11. Also prior to the closing, Mr. Marandola received a set of closing instructions from American Home. *Id.* ¶ 12. The closing instructions identify the closing date for plaintiffs' loan as September 26, 2006. *Id.* ¶ 13. Item 2 of the closing instructions (entitled "Loan Closing") states:

> This loan must close on September 26, 2006, and fund on October 2, 2006. If the loan cannot be closed or funded please call Jason Robison at the number indicated above. You are authorized to close this loan and disburse the loan proceeds only after you have secured and/or complied with all of the requirements of these loan closing instructions! Failure to comply with these instructions will result in a claim against the settlement agent.

*Id.* ¶ 14.

The parties signed the documents pertinent to the loan transaction at the September 26 closing. *Id.* ¶ 15. These documents include, but are not limited to, the promissory note and mortgage instruments (and their attendant riders), HUD-1 Settlement Statement, Notices of Right to Cancel, final Truth in Lending disclosure statement, signature/name affidavits, occupancy certification, borrower's certification, compliance agreement, credit score notice, adjustable rate mortgage loan disclosure statement, appraisal disclosure, title insurance disclosure, choice of insurance notice, notice of nonrefundability of loan fees, Equal Credit Opportunity Act notice, Real Estate Settlement Procedures Act servicing disclosure, and tax escrow account designation. *Id.* ¶ 16. Each of these documents is dated September 26, 2006. *Id.* ¶ 17.

Mr. Marandola personally notarized several of these documents, where applicable, at the closing. *Id.* ¶ 18. He also provided copies of the Notice of Right to Cancel and Truth in Lending disclosures to plaintiffs at the closing. *Id.* ¶ 19. No documents pertinent to the loan transaction, including the Notice of Right to Cancel and Truth in Lending disclosures, were signed or received by plaintiffs from Mr. Marandola on September 27, or any date thereafter. *Id.* ¶ 20.

Plaintiffs were provided with all the final documents pertinent to the loan transaction on a single day. *Id.* ¶ 21. Mr. Marandola did not, for example, provide plaintiffs with the Notice of Right to Cancel on a day different from the day they signed the promissory note. *Id.* ¶ 22. In fact, the Notice of Right to Cancel is normally given at the closing. *Id.* ¶ 23. It would be contrary to Mr. Marandola's custom and practice to provide a Notice of Right to Cancel on a day different from the day of the closing. *Id.*

On April 20, 2007, approximately seven months after the closing, plaintiffs sent a letter to American Home indicating their desire to rescind the mortgage loan. *Id.* ¶ 25. When American Home did not accede to the demand, on May 30, 2007, plaintiffs filed the instant lawsuit in this Court. *Id.* ¶ 26. Plaintiffs contend that the Notices of Right to Cancel the transaction "were defective, in violation of Regulation Z in that they contained the wrong date of the transaction and the wrong deadline in which the right to rescind expires" and that, "[b]y failing to indicate the proper date of the transaction and the rescission deadline American Home failed to clearly and conspicuously disclose the Plaintiffs' right to rescind." *Id.* ¶ 27. Through their Complaint, they seek rescission of the loan, statutory damages, attorneys' fees and litigation expenses. *Id.* American Home disputes plaintiffs' allegations, including that the Notice of Right to Cancel indicated the wrong transaction date and rescission deadline, as well as that the Notice failed to clearly and conspicuously disclose plaintiffs' right to rescind.

## APPLICABLE LEGAL STANDARDS

American Home moves to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. An early motion to dismiss "streamlines litigation by dispensing with needless discovery and fact finding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). For purposes of such a motion, the Court should accept plaintiffs' well-pleaded facts as true. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Plaintiffs, nonetheless, are required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory. *Id.* at 515. The Court need not accept allegations which have since been conclusively contradicted by plaintiffs' concessions or otherwise, and must likewise eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets. *Palmer v. Champion Mortg.*, 465 F.3d 24, 28 (1st Cir. 2006); *Gooley*, 851 F.2d at 514. "This methodology is particularly appropriate in the TILA context" because federal courts "have focused the lens of [their] inquiry on the test of the disclosures themselves rather than on plaintiffs' descriptions of their subjective understandings." *Palmer*, 465 F.3d at 28.

Rule 10(c) of the Federal Rules provides that exhibits that are made part of a pleading are "a part thereof for all purposes." Fed. R. Civ. P. 10(c). Consideration of the Notice of Right to Cancel, which was attached as Exhibit A to the Complaint, is appropriate in the context of this Motion to Dismiss. When documents are central to a plaintiff's claims, the documents can be considered at the pleading stage. *See, e.g.*, *Palmer*, 465 F.3d at 28 (stating that a Notice of Right to Cancel annexed to a complaint is "fair game" on a motion to dismiss); *Carye v. Long Beach Mortg. Co.*, 470 F. Supp. 2d 3, 9 n.4 (D. Mass. 2007) (same).

American Home also moves, in the alternative, for summary judgment pursuant to Federal Rule 56(a). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the defendant has pointed to the absence of adequate evidence supporting the plaintiff's case, the onus is on the plaintiff to present facts that show a genuine issue for trial. *Napier v. Town of Windham*, 187 F.3d 177, 182 (1st Cir. 1999). A plaintiff opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Id.* The plaintiff must offer significant probative evidence tending to support his or her complaint. *Id.*

## <u>ARGUMENT</u>

### I. <u>THE TRUTH IN LENDING ACT</u>

A brief overview of TILA's relevant provisions is in order. With respect to non-purchase-money mortgages on residential dwellings – the type of credit transaction at issue here – TILA confers upon the consumer a right to rescind within three business days of the transaction's consummation or within three days from delivery of the material disclosures. 15 U.S.C. § 1635(a); *Santos-Rodriguez v. Doral Mortg. Corp.*, 485 F.3d 12, 14 (1st Cir. 2007); *Palmer*, 465 F.3d at 27. The three-day rescission period is extended to three years if the creditor fails to meet the material disclosure requirements of TILA. § 1635(f); *Santos-Rodriguez*, 485 F.3d at 14; *Palmer*, 465 F.3d at 27. One of those material disclosures is notice to the consumer of the rescission right. *See* 12 C.F.R. § 226.23(b); *Santos-Rodriguez*, 485 F.3d at 14; *Palmer*, 465 F.3d at 27. The rescission notice must identify the transaction and also disclose: (1) the

retention or acquisition of a security interest in the consumer's principal dwelling; (2) the consumer's right to rescind; (3) the method for exercising the right to rescind, along with a form for that purpose, including the creditor's address; (4) the effects of rescission, as set forth in TILA's implementing regulation, Regulation Z, 12 C.F.R. pt. 226; and (5) the date the rescission period expires. *See* § 226.23(b); *Santos-Rodriguez*, 485 F.3d at 16.

Regulation Z includes an appendix of model forms for various consumer transactions, including Model Form H-8, entitled "Rescission Model Form (General)." 12 C.F.R. pt. 226 app. H-8. TILA permits a creditor to inform consumers of their rescission rights by using this form. § 1635(h); § 226.23(b)(2); *Santos-Rodriguez*, 485 F.3d at 15. With the exception of the typewritten transaction and rescission deadline dates – which are left blank in the Model Form – plaintiffs' Notice of Right to Cancel in this case mirrors Model Form H-8 in both its language and structure. *Compare* Compl. Ex. A *with* 12 C.F.R. pt. 226 app. H-8.

Under TILA, a consumer's rescission rights must be "clearly and conspicuously" disclosed. § 1635(a); *Santos-Rodriguez*, 485 F.3d at 16. The United States Court of Appeals for the First Circuit, however, quite recently joined other federal circuits in concluding that TILA's "clear and conspicuous" standard "is less demanding than a requirement of perfect notice." *Santos-Rodriguez*, 485 F.3d at 16 (citing *Veale v. Citibank*, 85 F.3d 577, 581 (11th Cir. 1996), and *Smith v. Chapman*, 614 F.2d 968, 972 (5th Cir. 1980)). Consequently, courts in the First Circuit do ***not*** follow the contrary view that "TILA does not easily forgive 'technical' errors." *Santos-Rodriguez*, 485 F.3d at 17 n.6 (quoting and rejecting *Handy v. Anchor Mortg. Corp.*, 464 F.3df 760, 764 (7th Cir. 2006)). The First Circuit has observed that the 1995 amendments to TILA, Truth in Lending Act Amendments of 1995, Pub. L. No. 104-29, § 3, 109 Stat. 271, 272-73, "'were intended by Congress to provide higher tolerance levels for what it viewed as honest

mistakes in carrying out disclosure obligations.'" *Santos-Rodriguez*, 485 F.3d at 17 (quoting *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 424 (1st Cir. 2007)). "In taking this step, Congress made manifest that although it had designed the TILA to protect consumers, it had not intended that lenders would be made to face overwhelming liability for relatively minor violations." *McKenna*, 475 F.3d at 424. Indeed, in adopting the 1995 amendments, the drafters observed that the right of rescission was "the most draconian remedy available under Truth in Lending." 141 Cong. Rec. S14566, 14567 (statement of Sen. D'Amato) (quoted in *McKenna*, 475 F.3d at 424).

## II. PLAINTIFFS' RIGHT TO RESCIND WAS ACCURATELY DISCLOSED

Against this backdrop, it is manifest that plaintiffs' rescission claim fails because it rests on the faulty supposition that the Notice of Right to Cancel misstated the date of the transaction and one of three alternative rescission deadlines. *See* Compl. ¶ 16 ("By failing to indicate the proper date of the transaction and the rescission deadline American Home failed to clearly and conspicuously disclose the Plaintiffs' right to rescind, in violation of 15 U.S.C. § 1635 and 12 C.F.R. § 226 [sic].").

In this case, the loan transaction was consummated at the closing on September 26, 2006, when plaintiffs signed and received the note, mortgage, Notice of Right to Cancel, TILA disclosures and other documents pertinent to the loan. The Notice of Right to Cancel expressly stated that plaintiffs had the legal right to cancel the transaction, within three business days, of: (1) the date of the transaction, which was correctly noted as September 26, 2006; (2) the date plaintiffs received their TILA disclosures; or (3) the date plaintiffs received the Notice of Right to Cancel. Compl. Ex. A. The Notice also correctly indicated that the cancellation must be sent to American Home by midnight on September 29, 2006. *Id.* It is undisputed that plaintiffs did

not exercise their alleged right to rescind until April 20, 2007, nearly seven months after the closing. Compl. ¶ 11.

Because the date of the transaction, and of receipt of the material disclosures, was September 26 – not September 27 – American Home clearly and conspicuously disclosed the right to rescind, and the extended three-year rescission period does not apply. *See, e.g.*, *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 251 (6th Cir. 1980) (explaining that a consumer only has a "right to rescind after the three-day period has passed if the right to rescind was not disclosed or if other material disclosures were not made as required."); *Davis v. FDIC*, 620 F.2d 489, 492 (5th Cir. 1980) (explaining that the consumers' right of rescission under § 1635(a) and (f) continues for more than three days after the extension of credit only if the creditor has failed to make material disclosures required under TILA). This alone is fatal to plaintiffs' claim.

## III. PLAINTIFFS' RIGHT TO RESCIND WAS ADEQUATELY DISCLOSED

Of course, even if the loan transaction was consummated on September 27, 2006, as plaintiffs allege in their Complaint, that does not mean that American Home failed to clearly and conspicuously disclose the right to rescind to plaintiffs. To the contrary, any reasonable consumer could have recognized so obvious a discrepancy as a misstated date of the loan transaction, and could have ascertained the actual rescission deadline. Additionally, the Notice of Right to Cancel was clear and conspicuous because it contained an alternative provision providing for a three-day rescission period from the date of receipt of the Notice.

As stated above, nothing in TILA requires perfect notice of the right to rescind. *Santos-Rodriguez*, 485 F.3d at 16. Moreover, it is unnecessary to inquire into the subjective deception or misunderstanding of a particular consumer in determining whether a disclosure violates TILA. *Palmer*, 465 F.3d at 28 (citing *Zamarippa v. Cy's Car Sales, Inc.*, 674 F.2d 877, 879 (11th Cir.

1982)). Instead, the Court should focus "the lens of [the] inquiry on the text of the disclosures themselves rather than on plaintiffs' descriptions of their subjective understandings." *Id.* "This emphasis on objective reasonableness, rather than subjective understanding, is also appropriate in light of the sound tenet that courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer – a consumer who is neither particularly sophisticated nor particularly dense." *Id.* Thus, the Court should "turn to the question of whether the average consumer, looking at the Notice objectively, would find it confusing." *Id.*

The Notice here states that "[t]he date of the transaction . . . is September 26, 2006." Compl. Ex. A. If a loan transaction date is misstated on plaintiffs' Notice of Right to Cancel, then the average consumer should be immediately aware of this discrepancy. There is no mystery or magic to when a loan closing occurs. A consumer can easily recognize when he or she signed the note, mortgage and other documents pertinent to a mortgage loan. The date of the loan transaction, therefore, is not something hidden from the consumer, or known only to the creditor. As the courts have observed, "'consumers who are aware of the true terms of a contract are more able to see that these terms are not clearly and conspicuously disclosed.'" *Palmer*, 465 F.3d at 29 (quoting *Chapman*, 614 F.2d at 971). Because the average consumer would know the true date of his or her loan transaction, the average consumer should have no trouble calculating a rescission deadline running three business days from that date.

Additionally, and alternatively, an average consumer would be able to calculate a rescission deadline running three business days from the date the material disclosures, like the Notice of Right to Cancel, were delivered to the consumer, as opposed to the date of the transaction. As noted above, the Notices are standard forms stating that the borrower has the right to cancel the transaction within three business days from ***the later of***: (1) the date of the

transaction; ***or*** (2) the date of receipt of the TILA disclosures; ***or*** (3) the date of receipt of the Notice. In *Palmer v. Champion Mortgage*, "the First Circuit held that a notice which failed to include a date certain for rescission was nevertheless clear and conspicuous because it contained an alternative provision providing for a three-day rescission period from the date of the receipt of the Notice." *Carye*, 470 F. Supp. 2d at 9 (describing and following *Palmer*, 465 F.3d at 28-29). A creditor which "uses plain and legally sufficient language ought to be held harmless. In other words, courts ought not to invent ambiguities that do not in fact exist." 465 F.3d at 29. In this regard, *Palmer* is directly analogous to this case.

The Notice here states that "[i]f you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of September 29, 2006 ***(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above)***." Compl. Ex. A (emphasis added). The "three events listed above" include the transaction date, TILA disclosure receipt date, and Notice of Right to Cancel receipt date. *Id.* The TILA disclosures and Notice of Right to Cancel were provided on the same day that plaintiffs obtained their loan, which plaintiffs allege occurred on September 27. Compl. ¶ 9. Consequently, even if the Notice misstates the date of the transaction, and misstates one rescission deadline as September 29, 2006, the Notice clearly and conspicuously discloses the alternative rescission deadlines running from the date the TILA disclosures were received or the date the Notice of Right to cancel was received. Thus, the average consumer would be aware of the later rescission deadlines.

## IV. ANY ERROR IN DATING WAS BONA FIDE AND UNINTENTIONAL

Finally, any alleged error in dating the Notice of Right to Cancel was unintentional, clerical in nature and occurred notwithstanding procedures reasonably adapted to avoid such

errors. American Home, therefore, falls within the "safe harbor" exception found at 15 U.S.C. § 1640(c) and cannot be held liable in this case.

TILA states:

> A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.

§ 1640(c).

"In order to receive this protection, a creditor must show that the error was a 'bona fide error,' and that the creditor maintains procedures 'reasonably adapted to avoid such errors.'" *In re Groat*, No. 06-6071NE, 2007 WL 1500050, at *3, ___ B.R. ___ (B.A.P. 8th Cir. May 24, 2007). This exception should not be strictly construed against the creditor. As noted above, through its 1995 amendments to the Act, Congress expressed its intent to provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations. *Santos-Rodriguez*, 485 F.3d at 17; *McKenna*, 475 F.3d at 424; *Groat*, 2007 WL 1500050, at *3.

In this case, American Home used AmeriTitle, a company dedicated to closing mortgage loan transactions, to conduct plaintiffs' loan closing in September 2006. The settlement agent who actually conducted the closing, Louis Marandola, is a Rhode Island attorney and notary public. Mr. Marandola has attested that it is AmeriTitle's procedure to have an assistant who is trained in the preparation of loan closing documents prepare such documents. After the documents were prepared by the assistant, Mr. Marandola proofread them. Indeed, it is Mr. Marandola's practice to carefully examine all documents prior to, or at, a closing to ensure their

accuracy, including the accuracy of dates. The documents were then reviewed with the plaintiffs before the plaintiffs signed them. Thus, although American Home continues to maintain that the date of the closing and consummation was on September 26, if there had been an error in the dates reflected on the closing documents, that error was clerical and unintentional.

In short, the typographical error complained of in this case was not the type of notice defect that constitutes an actionable TILA violation. AmeriTitle's procedure, with two people reviewing the documents prior to having plaintiffs sign them, and then reviewing them with plaintiffs, was reasonably adapted to avoid any error in dating. *See Groat*, 2007 WL 1500050, at *3 (holding that a settlement agent's procedure of having a trained assistant prepare closing documents, then having an attorney review the documents, was reasonably adapted to avoid an error in dating so as to make § 1640(c)'s "safe harbor" provision applicable); *see also Henning v. Daniels*, 653 F.2d 104, 107 (4th Cir. 1981) (holding that procedure of proofreading security agreements executed in connection with sales of mobile homes was reasonably adapted to avoid errors such as failing to check the appropriate box for comprehensive insurance coverage, and thus the seller was entitled to the "bona fide error" defense of § 1640(c)).

## CONCLUSION

Plaintiffs are not entitled to rescind their loan transaction. Accordingly, for all the foregoing reasons, American Home respectfully requests that the Court enter an order dismissing the Complaint for failure to state a claim upon which relief can be granted. In the alternative, American Home requests that the Court enter an order granting summary judgment in American Home's favor, and against plaintiff.

Respectfully submitted,
/S/

Carl S. Levin, Esq. #3336
Armstrong, Gibbons & Gnys, LLP
155 South Main Street
Providence, Rhode Island 02903
(401) 751-1500 ext. 26
(401) 751-4124
clevin@agglaw.com

David M. Souders, Esq.*
Brian P. Perryman, Esq.*
Weiner Brodsky Sidman Kider PC
1300 19th Street, NW, Fifth Floor
Washington, DC 20036
(202) 628-2000
(202) 6282011
souders@wbsk.com
perryman@wbsk.com

**Pro hac vice admission pending*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that a true copy of the Motion to Dismiss, Memorandum of Law and Statement of Undisputed Facts was sent via electronic mail on this 19th day of July, 2007, to the following counsel of record:

Christopher M. Lefebvre, Esq.
Family and Consumer Law Center
Two Dexter Street, P.O. Box 479
Pawtucket, Rhode Island 02862

/S/

**Carl S. Levin, Esq. #3336**

F:\98077\087\lbpp1696brf MTD.doc

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ELIZABETH and KEITH WHITE,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HOME MORTGAGE CORP.,<br><br>Defendant. | C.A. No. 07-200-ML |

**DECLARATION OF BRIAN P. PERRYMAN**

I, Brian P. Perryman, hereby declare as follows:

1. I am an attorney with Weiner Brodsky Sidman Kider PC, counsel in this action for defendant American Home Mortgage Corp. d/b/a American Brokers Conduit. I am familiar with the facts and circumstances regarding the claims brought against defendants.

2. I am over eighteen years of age, competent to testify, and state the following based on my personal knowledge.

3. I submit this Declaration in support of defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment.

4. Attached hereto as Exhibit 1 is a true, accurate and authentic copy of the document entitled "Confirmation of Loan Scheduling" referenced in the Declaration of Louis Marandola.

5. Attached hereto as Exhibit 2 is a true, accurate and authentic copy of the set of closing instructions referenced in the Declaration of Louis Marandola.

6. Attached hereto as Exhibit 3 is a true, accurate and authentic copy of the promissory note and attendant riders referenced in the Declaration of Louis Marandola.

7. Attached hereto as Exhibit 4 is a true, accurate and authentic copy of the mortgage instrument referenced in the Declaration of Louis Marandola.

8. Attached hereto as Exhibit 5 is a true, accurate and authentic copy of the HUD-1 Settlement Statement referenced in the Declaration of Louis Marandola.

9. Attached hereto as Exhibit 6 is a true, accurate and authentic copy of the Notices of Right to Cancel referenced in the Declaration of Louis Marandola.

10. Attached hereto as Exhibit 7 is a true, accurate and authentic copy of the final Truth in Lending disclosure statement referenced in the Declaration of Louis Marandola.

11. Attached hereto as Exhibit 8 is a true, accurate and authentic copy of the signature/name affidavits referenced in the Declaration of Louis Marandola.

12. Attached hereto as Exhibit 9 is a true, accurate and authentic copy of the occupancy certification referenced in the Declaration of Louis Marandola.

13. Attached hereto as Exhibit 10 is a true, accurate and authentic copy of the borrower's certification referenced in the Declaration of Louis Marandola.

14. Attached hereto as Exhibit 11 is a true, accurate and authentic copy of the compliance agreement referenced in the Declaration of Louis Marandola.

15. Attached hereto as Exhibit 12 is a true, accurate and authentic copy of the credit score notice referenced in the Declaration of Louis Marandola.

16. Attached hereto as Exhibit 13 is a true, accurate and authentic copy of the adjustable rate mortgage loan disclosure statement referenced in the Declaration of Louis Marandola.

17. Attached hereto as Exhibit 14 is a true, accurate and authentic copy of the appraisal disclosure referenced in the Declaration of Louis Marandola.

18. Attached hereto as Exhibit 15 is a true, accurate and authentic copy of the title insurance disclosure referenced in the Declaration of Louis Marandola.

19. Attached hereto as Exhibit 16 is a true, accurate and authentic copy of the choice of insurance notice referenced in the Declaration of Louis Marandola.

20. Attached hereto as Exhibit 17 is a true, accurate and authentic copy of the notice of nonrefundability of loan fees referenced in the Declaration of Louis Marandola.

21. Attached hereto as Exhibit 18 is a true, accurate and authentic copy of the Equal Credit Opportunity Act notice referenced in the Declaration of Louis Marandola.

22. Attached hereto as Exhibit 19 is a true, accurate and authentic copy of the Real Estate Settlement Procedures Act servicing disclosure referenced in the Declaration of Louis Marandola.

23. Attached hereto as Exhibit 20 is a true, accurate and authentic copy of the tax escrow account designation referenced in the Declaration of Louis Marandola.

I solemnly affirm, under penalties of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: July 10, 2007.

Brian P. Perryman

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ELIZABETH and KEITH WHITE, | : | C.A. No. 07-200-ML |
| Plaintiffs, | : | |
| v. | : | |
| AMERICAN HOME MORTGAGE, | : | |
| Defendant. | : | |

**DECLARATION OF LOUIS MARANDOLA**

I, Louis Marandola, hereby declare as follows:

1. I am over eighteen years of age, competent to testify, and state the following based on my personal knowledge.

2. I submit this Declaration in support of defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment.

3. I am an attorney licensed to practice law in the State of Rhode Island, and was so licensed during 2006.

4. I am also a Rhode Island notary public, and was so qualified during 2006.

5. During 2006 and continuing to the present, I have been the principal owner of, and serve as a settlement agent for, AmeriTitle, LLC ("AmeriTitle") at its offices at 132 Old River Road, Suite 104, Lincoln, Rhode Island 02865.

6. AmeriTitle is in the business of closing mortgage loan transactions on behalf of mortgagees and mortgagors.

7. Part of my duties as a settlement agent are to have mortgagors sign, and to provide them with copies of, documents pertinent to their loan transactions. I carefully examine all documents prior to, or at, a closing to ensure their accuracy, including the accuracy of dates.

8. I personally conducted the closing of the loan transaction at issue in this action.

9. The closing occurred on September 26, 2006.

10. The mortgagee in the loan transaction was American Home Mortgage Corp. d/b/a American Brokers Conduit ("American Home").

11. The mortgagors were plaintiffs Keith and Elizabeth White. The property that is the subject of the mortgage is 57 Osceola Avenue, Warwick, Rhode Island 02888.

12. Prior to the closing, I received a document entitled "Confirmation of Loan Scheduling" from American Home. This document identifies the closing date of plaintiffs' loan as September 26, 2006.

13. Also prior to the closing, I received a set of closing instructions from American Home. The closing instructions identify the closing date for plaintiffs' loan as September 26, 2006. Item 2 of the closing instructions (entitled "Loan Closing") states: "This loan must close on September 26, 2006, and fund on October 2, 2006. If the loan cannot be closed or funded please call Jason Robison at the number indicated above. You are authorized to close this loan and disburse the loan proceeds only after you have secured and/or complied with all of the requirements of these loan closing instructions! Failure to comply with these instructions will result in a claim against the settlement agent."

14. I have read plaintiffs' Complaint in the above-styled action. Paragraph 9 of the Complaint alleges: "On or about September 27, 2006, Plaintiffs White obtained a loan from American Home secured by their residence, for the purpose of debt consolidation." This

allegation is not accurate insofar as the loan was not "obtained" or consummated on September 27, 2006. The loan was consummated and closed on September 26, 2006.

15. The parties signed the documents pertinent to the loan transaction on September 26, 2006, at the closing.

16. These documents include, but are not limited to, the promissory note and mortgage instruments (and their attendant riders), HUD-1 Settlement Statement, Notices of Right to Cancel, final Truth in Lending disclosure statement, signature/name affidavits, occupancy certification, borrower's certification, compliance agreement, credit score notice, adjustable rate mortgage loan disclosure statement, appraisal disclosure, title insurance disclosure, choice of insurance notice, notice of nonrefundability of loan fees, Equal Credit Opportunity Act notice, Real Estate Settlement Procedures Act servicing disclosure, and tax escrow account designation.

17. I personally notarized several of these documents, where applicable, on September 26, 2006, at the closing.

18. I provided copies of the Notice of Right to Cancel and Truth in Lending disclosures to plaintiffs on September 26, 2006, at the closing.

19. No documents pertinent to the loan transaction, including the Notice of Right to Cancel and Truth in Lending disclosures, were signed or received by plaintiffs from me on September 27, 2006, or at any date thereafter.

20. I do not know why plaintiffs are alleging that the loan transaction occurred on September 27, 2006. That is not an accurate allegation.

21. I provided the plaintiffs all the final documents pertinent to the loan transaction on a single day. I did not, for example, provide plaintiffs with the Notice of Right to Cancel on a day different from the day they signed the promissory note.

22. The Notice of Right to Cancel would normally be given at the closing. It would be contrary to my custom and practice to provide a Notice of Right to Cancel on a day different from the day of the closing.

23. It is AmeriTitle's procedure to have an assistant who is trained in the preparation of loan closing documents prepare such documents. After the documents are prepared, I proofread them before a mortgagor signs them. I or my assistant then review each document with the mortgagor before he or she signs it.

24. These same procedures were following in connection with the closing of plaintiffs' loan transaction.

25. Although the date of the closing and consummation was on September 26, 2006, if there were an error in the dates reflected on the closing documents, including the Notice of Right to Cancel, that error was clerical and completely unintentional.

I solemnly affirm, under penalties of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: 7/2, 2007.

Louis Marandola, Esq.